IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LARRY I. NEWKIRK and<br>RUTH A. NEWKIRK,<br><br>          Plaintiffs,<br><br>vs.<br><br>CONAGRA FOODS, INC., a Delaware corporation; SYMRISE, INC., a New Jersey Corporation; and CHR. HANSON INC., a Wisconsin Corporation,<br><br>          Defendants,<br><br>McGRATH NORTH MULLIN & KRATZ, PC LLO; SANDRA MORAR; and CONAGRA FOODS, INC.,<br><br>          Movants. | 8:10-cv-22-LSC-FG3<br><br>MEMORANDUM AND ORDER<br><br>(Related Case No. CV-08-00273-FVS,<br>U.S. District Court, E.D. Wash.) |

      This discovery dispute is before the magistrate judge pursuant to 28 U.S.C. § 636 and NECivR 72.1 for full pretrial supervision and resolution of the Motion to Quash and for Protective Order filed by McGrath North Mullin & Kratz, PC LLO ("McGrath North"), Ms. Sandra Morar, Esq., and ConAgra Foods, Inc. ("ConAgra") (together, "Movants"). The subpoenas in question were issued by this court, *see* Fed. R. Civ. P. 45(a)(2). The underlying litigation is pending in the Eastern District of Washington.

      The court finds that the motion to quash should be granted.

## NATURE OF THE CASE

In this products liability case, the underlying First Amended Complaint alleges that plaintiff Larry Newkirk regularly prepared four to six bags of microwave popcorn each day from about 1989 through September 2007, including specifically microwave popcorn sold under the label "Act II Butter" or "Act II Butter Lovers." These products were produced by the defendant, ConAgra. In the course of cooking the microwave popcorn in his microwave and preparing to eat it, Mr. Newkirk was exposed to the flavoring compound diacetyl as the butter flavoring became heated and vaporized. Plaintiffs allege that Mr. Newkirk's exposure to the popcorn and natural and artificial butter flavorings directly and proximately caused personal injury, i.e., "sustained, severe, permanent, and/or progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function, including, but not limited to: bronchiolitis obliterans, severe and progressive damage to the respiratory system, extreme shortness of breath and reduced life expectancy." (Doc. 3-7, Amended Complaint at ¶¶ 24-26).

In December 2009, plaintiffs' counsel served subpoenas (Docs. 3-3 & 3-4) on the McGrath North law firm and McGrath North attorney Sandra Morar commanding the production of seven categories of documents relating to work the firm performed for ConAgra concerning diacetyl, microwave popcorn or lung disease. The subpoenas also commanded McGrath North and/or Ms. Morar to appear for deposition, i.e.,

>  to produce for examination a representative who is able to testify on the following subjects:
>
>  1. Diacetyl, microwave popcorn and the potential to emit organic compounds or to cause health hazard including any work performed for you, at your direction or in which you participated with those persons described above.
>  2. If you contend that this work was conducted for litigation, produce someone to describe the litigation.

Sandra Morar has practiced law at the McGrath North law firm since she was admitted to the bar in 1988. She initially stated that the two deposition topics relate to certain legal services she performed for ConAgra in the course of her legal practice at McGrath North. Any testimony she could provide on the topics designated by the plaintiffs, either individually or as a representative of McGrath North, (1) should be subject to the attorney-client privilege and/or work product doctrine because it would reflect her legal advice to ConAgra and the privileged information she received in rendering that legal advice; or (2) could be obtained from other witnesses who are not attorneys. (Doc. 3-1, Declaration of Sandra Morar).

No attorney from the McGrath North law firm is acting as trial counsel in the *Newkirk* case. ConAgra's trial attorney, Corey L. Gordon, advised that the plaintiffs have had the opportunity to conduct discovery since November 2008. As of January 6, 2010, the plaintiffs had served requests for admissions, two sets of interrogatories and three requests for production of documents; deposed three ConAgra fact witnesses; and deposed four expert witnesses engaged by ConAgra. ConAgra has produced over 10,000 pages of documents to the plaintiffs. (Doc. 3-5, Declaration of Corey L. Gordon).

The narrow issue actually presented in this court by the Movants was whether the deposition notice(s) should be quashed pursuant to Rules 45(c)(3) or 26(c) of the Federal Rules of Civil Procedure, or *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987). The plaintiffs chose to respond by filing a 23-page brief arguing the merits of their substantive claims, together with over 200 pages of evidence, most of which they had already obtained from ConAgra in the underlying action.

Plaintiffs assert that ConAgra has waived any privilege or work product protection as to the work provided by the McGrath North law firm due to ConAgra's production during discovery of a report entitled "Evaluation of Microwave Popcorn Potential to Emit Organic Compounds" (the "Aspen Report") prepared in 2005 by Aspen Research Corporation. (Doc. 27, Plaintiffs' Brief at pp. 2 & 10). The Aspen Report was prepared for the McGrath North law firm and was addressed to Ms. Morar's attention. Plaintiffs verify in their brief that ConAgra also produced certain documents relating to investigations of popcorn plants conducted by the National Institute for Occupational Safety and Health (NIOSH), an organization which studies worker health hazards. In the same paragraph in which they acknowledge the NIOSH studies did not pertain to ordinary consumers' exposure to the products at issue, plaintiffs accuse ConAgra of conducting "secret studies under the cloak of lawyers." (Doc. 27, Plaintiffs' Brief at p. 4). The plaintiffs contend that they should be allowed to depose Ms. Morar and McGrath North as fact witnesses, based on their speculation that counsel's participation in the various studies "was more likely for business

or technical purposes, not litigation." (*See* Doc. 27, Plaintiffs' Brief at p. 10). In their concluding paragraphs, the plaintiffs accuse ConAgra of engaging in a "fraudulent scheme to investigate its own products' dangerous propensities and then shroud the investigation and its findings under the veil of privilege." (Doc. 27, Plaintiffs' Brief at p. 20).[1]

The local rules of practice permit the filing of a reply brief; however, "the reply brief may not merely repeat the moving party's initial arguments, but rather must address factual or legal issues raised in the opposing brief." NECivR 7.0.1(c). The Movants did file a reply brief and evidence index (Docs. 44 & 45), appropriately addressing the expansive factual allegations and legal issues raised in the plaintiffs' opposing brief.[2]

In response to the allegations made in the plaintiffs' opposing brief, Sandra Morar submitted a second declaration stating that she and the McGrath North firm have provided representation to ConAgra for over 30 years. During the course of providing legal advice to ConAgra, Morar learned from experience that there was a possibility of a variety of litigation involving widely distributed food products. By 2000, she anticipated the possibility of litigation involving microwave popcorn. Morar states that she performed legal services for

---

[1] In their response brief, the plaintiffs also complain that "many" documents listed on ConAgra's privilege log are not privileged and are inadequately described. They state that "a more thorough review must be made." (Doc. 27 at pp. 2 & 15). The issues presented in this district pertain solely to the deposition subpoenas served on the McGrath North law firm and Sandra Morar. If any review of ConAgra's privilege log is conducted, it will not be done in this court. *See* Fed. R. Civ. P. 37(a)(2).

[2] The court will deny the plaintiffs' motion to strike portions of the Movants' reply brief. Plaintiffs' motions for leave to file a surreply brief will also be denied.

and advised ConAgra regarding microwave popcorn litigation relating to ConAgra employees starting by 2000. When the lawsuits by workers were filed, Morar provided legal advice to ConAgra regarding that litigation. She further anticipated possible litigation including, among other things, claims from and against flavor manufacturers, contribution and indemnity issues arising from workers cases, workers compensation claims, and direct worker claims. Mr. Morar states that she was involved in dealing with scientists or consulting experts, as depicted in the plaintiffs' brief, in order to provide legal advice and to evaluate the technical information they provided in the course of giving legal advice. (Doc. 45-1, Declaration of Sandra D. Morar).

One of ConAgra's trial attorneys, Micah Hines, states by declaration that ConAgra did produce the Aspen Report and an Addendum to it. On February 3, 2010, plaintiffs deposed Kurt Heikkila, who was the head of the Aspen project and the person most knowledgeable about the Aspen Report. On January 12, 2010, plaintiffs deposed Mr. Rodney Williams, one of ConAgra's experts who was also intimately involved in the Aspen Project. ConAgra states that it has produced over 10,000 pages of non-privileged documents, "thousands" of which relate to the science underlying the Aspen Report. ConAgra also designated five Rule 30(b)(6) witnesses, many of whom could–and did–speak to the issues on which plaintiffs seek to depose Ms. Morar and McGrath North. Plaintiffs had the opportunity to obtain information regarding certain communications with the EPA (*see* Docs. 28-13, 28-16 & 28-17, Plaintiffs' Exhibits M, P & Q ), during their deposition of Mr. James Montealegre,

ConAgra's Rule 30(b)(6) witness on communications with the EPA. Mr. Montealegre was the author of some of the communications. Mr. Hines advises that Mr. Monteleagre and Mr. Wayne Waite (a recipient of Mr. Monteleagre's communications) were designated as Rule 30(b)(6) witnesses on the subject of NIOSH investigations. They have already been deposed on the topics designated in the subpoenas served on Ms. Morar and McGrath North. The Movants' reply brief and evidence persuasively demonstrate that the plaintiffs could have obtained information, from the most knowledgeable witnesses, about most of the documents included in plaintiffs' 238-page evidentiary submission (Doc. 28) by simply inquiring about those matters during the Rule 30(b)(6) and expert witness depositions.

## LEGAL ANALYSIS

The scope of discovery in federal civil actions is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure, which allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." For good cause, the court may order discovery of "any matter relevant to the subject matter involved in the action." The scope of discovery, however, may be subject to certain limitations.

### A. Rules 26(b)(2) and 45(c)(3)

Pursuant to Rule 26(b)(2)(C), the court may limit discovery if the court determines that:

      (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

      (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

      (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.).

Fed. R. Civ. P. 26(b)(2)(C).

Under Rule 45(c)(3), the court must quash a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

The Federal Rules of Civil Procedure do not themselves exempt attorneys from being a source of discoverable facts. In *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 247 (D. Kan. 1995), the court observed:

    Fed. R. Civ. P. 26(b)(3)[3] clearly contemplates discovery from attorneys as well as from the parties themselves or their agents. When work product is

---

[3]Rule 26(b)(3), as amended, provides, in part:
  (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4) [experts], those materials may be discovered if:
     (i) they are otherwise discoverable under Rule 26(b)(1); and
     (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
  (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

> sought under Rule 26(b)(3), such discovery is limited to circumstances where the party seeking discovery can establish a substantial need and an inability to obtain the substantial equivalent by other means. The burden of establishing the criteria set forth in Rule 26(b)(3) is upon the party seeking discovery. Neither the criteria for determining the appropriateness of discovery or the burden of establishing the existence of the criteria are altered because the documents were prepared by or in the custody of an attorney. Not only are attorneys not exempt from this rule, discovery from them is clearly contemplated. It is inconceivable that had the drafters of the Federal Rules of Civil Procedure, the Supreme Court or Congress intended to exempt attorneys from the provisions of Rule 30 or to otherwise limit discovery from attorneys, they would not have included a provision in Rule 30 similar to that contained in Rule 26(b)(3). Had the Court or Congress intended to engraft a preliminary showing when deposition discovery was sought from attorneys, such an exception would likely have been found in Rule 30 or otherwise within the Rules of Civil Procedure. *Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation.*

(Emphasis added).

Within the Eighth Circuit, the leading case on deposing the trial counsel of an adverse party has been *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). In *Shelton*, the Court of Appeals

> cautioned against the potential problems caused by deposing opposing counsel and developed a three-prong test that a party must satisfy in order to depose the opposition's attorney. *See* [*Shelton*, 805 F.2d] at 1327. A party must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." *Id.* This difficult burden imposed by *Shelton* was intended to guard against the "harassing practice of deposing opposing counsel ... that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Id.* at 1330.

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002). The court subsequently stated in *Pamida v. E.S. Originals* that its decision in *Shelton* was intended "to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.... Because this abuse of the discovery process had become an ever increasing practice, this Court erected the *Shelton* test as a barrier to protect trial attorneys from these depositions." 281 F.3d at 730.

> But *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection *Shelton* provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case.

*Id*.

Plaintiffs contend that *Shelton* does not apply in this case because Morar and McGrath North are not ConAgra's trial attorneys in the *Newkirk* litigation. The "trial attorney" at issue in *Shelton*, however, was actually an in-house attorney who was assisting with the trial of the case. The principles announced in *Shelton* were not limited to "trial" attorneys, and this court does not construe the factually-distinguishable[4] *Pamida v. E.S. Originals* to hold otherwise. *See Desert Orchid Partners, LLC. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 220

---

[4] *Plymouth Indus., LLC v. Sioux Steel Co.*, 2006 WL 695458 (D. Neb. 2006), a patent infringement case, is also distinguishable. In *Plymouth Indus.*, this court found that the deposition of the attorney who prosecuted the patent in suit was crucial to the defense of inequitable conduct. *Accord Ed Tobergte Associates Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 559 & n.46 (D. Kan. 2009) (*Shelton* factors were met).

(D. Neb. 2006). As one court has observed, "the allusion to trial attorneys is unrelated to the [*Pamida*] court's holding and nowhere in the decision is any effort made to create a distinction based upon the attorney's status. Certainly, in light of *Shelton*'s specific application to in-house attorneys, such a distinction, if intended, would have represented a significant departure from precedent that would not have gone unexplained." *Massillon Mgmt., LLC v. Americold Realty Trust*, 2009 WL 614831 at *4 n.6 (N.D. Ohio Jan. 21, 2009).

The court concludes the *Shelton* test applies in this instance. Although Ms. Morar and McGrath North are not ConAgra's trial attorneys in the *Newkirk* litigation, they have provided legal advice to ConAgra for many years, including legal advice involving workers' exposure to diacetyl in popcorn plants. The plaintiffs want to depose Ms. Morar on the very broadly-stated topics of "diacetyl, microwave popcorn and the potential to emit organic compounds or to cause health hazard[s]." These are issues upon which Ms. Morar provided legal services and advice to ConAgra in anticipation of litigation.

Applying *Shelton*, this court would allow the plaintiffs to depose ConAgra's attorneys only if the plaintiffs succeeded in showing that (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. The plaintiffs have not met this burden. Clearly, ConAgra has already produced the Aspen Report, thousands of pages of related non-privileged documents, and documents relating to the

NIOSH studies. The persons most knowledgeable on these documents and issues were already made available for deposition and have been deposed by the plaintiffs. ConAgra has already provided the plaintiffs with relevant, nonprivileged information covering the proposed deposition topics. The plaintiffs have no need to depose ConAgra's attorneys, and the information sought is not crucial to the preparation of their case.

In the alternative, the court finds that the Movants are entitled to relief under Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii), because the discovery sought by the plaintiffs is unreasonably cumulative or duplicative and can be obtained from some other source that is more convenient, less burdensome, or less expensive, and the plaintiffs have had ample opportunity to obtain the information by discovery in the underlying action.

## ORDER

For the reasons discussed above,

**IT IS ORDERED:**

1. The Motion to Quash and for Protective Order (Doc. 1) is granted. The deposition subpoenas served on McGrath North Mullin & Kratz, PC LLO and Ms. Sandra Morar, Esq. are hereby quashed.

2. The parties' motions for leave to file documents under seal (Docs. 26 & 43) are granted, based on counsel's representations that the documents in question are subject to a protective order in the underlying litigation.

3. Plaintiffs' Motion (Doc. 48) to Strike portions of Movants' response brief is denied.

4. Plaintiffs' Motions for leave to file a surreply brief (Docs. 47 & 49) are denied.

A party may object to this order by filing an "Objection to Magistrate Judge's Order" within 14 days after being served with the order. The objecting party must comply with all requirements of NECivR 72.2.

**DATED May 27, 2010.**

                          **BY THE COURT:**

                          **s/ F.A. Gossett**
                          **United States Magistrate Judge**